THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARCUS KENTRAL BROWN,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR NEW TRIAL**<br><br>Case No. 4:21-cr-00129-AMA<br><br>District Judge Ann Marie McIff Allen |

Defendant Marcus Kentral Brown was found guilty of Possession of Cocaine with Intent to Distribute, at least 500 grams, and Carrying a Firearm During and in Relation to a Drug Trafficking Crime by a jury on July 2, 2026.[1] He moved for a new trial on August 29, 2026.[2] The issue has been fully briefed by the parties. Because Mr. Brown fails to show a new trial is required in the interest of justice, his motion for a new trial is DENIED.

## I. FINDINGS OF FACT[3]

On July 13, 2021, while returning home to Chicago from Los Angeles, Mr. Brown was stopped by the Utah Highway Patrol. During a search of Mr. Brown's vehicle, officers seized over 10,000 grams of cocaine as well as a loaded Glock pistol.[4] Mr. Brown was arrested during the stop.[5] He was subsequently indicted on two charges: Possession of Cocaine with Intent to Distribute and Possession of a Firearm in Furtherance of a Drug Trafficking Crime.[6]

[1] ECF No. 193.
[2] ECF No. 207.
[3] The following facts were developed during trial.
[4] ECF No. 202 at 93–94, 110–111, 125.
[5] ECF No. 202 at 88.
[6] ECF No. 1.

On March 25, 2025, in preparation for trial, Mr. Brown filed a Motion to Inform Venire and Jury Regarding Implicit Bias, including a request that the Court show prospective jurors a video explaining unconscious bias and include jury instructions on the subject of unconscious bias generally.[7] The government filed a response in opposition to this motion on March 31, 2025.[8] During the status conference on April 22, 2026, the Court denied this motion from the bench as unnecessary given the Court's existing instructions and in light of the risk that the request might confuse and distract the jury.[9] The Court also noted that the it would "continue its admonitions with respect to the avoidance of bias and prejudice that are already baked into [its] instructions."[10] During pretrial conferences on February 7, 2022 and June 22, 2026, the Court instructed the parties to submit to the Court proposed questions for voir dire before trial.[11] This instruction was also clearly set forth in several trial orders.[12] The parties filed joint proposed voir dire questions on both October 24, 2025 and March 31, 2026.[13] Neither of these filings requested or proposed any additional questions or language specifically concerning race or racial bias.

A three-day trial for Mr. Brown was held June 30, 2026 through July 2, 2026. On the first day of trial, before jury selection began, Defendant requested that the Court ask the panel of prospective jurors race-related questions to assist in determining whether potential jurors had any

---

[7] ECF No. 110.
[8] ECF No. 114.
[9] ECF No. 139. Audio Recording of Status Conference at 3:16:00–3:16:55, April 22, 2025 (on file with court clerk).
[10] *Id.*
[11] ECF No. 8, 183.
[12] ECF Nos. 75, 96, 141, 149. The same orders also established deadlines for proposed jury instructions. None of the proposed jury instructions submitted by the parties pursuant to the trial orders requested additional instructions regarding bias or prejudice, beyond those instructions already included in the stock jury instructions available on the Court's chambers website that address those issues. *See* ECF Nos. 119, 159.
[13] ECF Nos. 117, 161.

racial bias.[14] He supported this request with demographic data which indicated that the population of the state of Utah is 74% White and 1% Black.[15] The Court denied the request and identified several reasons: the request was not timely and there was no language proposed; the Court already intended to (and did) ask questions to vet issues of bias in selection; and the Court did not find that there were circumstances in the case where there was a reasonable possibility that racial or ethnic prejudice may influence the jury.[16]

After viewing the venire and before follow-up questioning of prospective jurors, Mr. Brown asserted that the venire appeared to have no Black men or women and renewed his request, citing the homogenous nature of the venire, district, and state.[17] In his request, Mr. Brown recognized that the Court was not required to grant the request as a constitutional matter.[18] The Court found that there were insufficient grounds to revisit its previous decision and denied the renewed request.[19]

The Court's voir dire included questions intended to address possible racial biases. Before these questions were asked, the venire was informed that the questions were "intended to discover if you have any knowledge of this case, any preconceived opinions you cannot fairly set aside, or any personal experience that might make it difficult for you to be fair and impartial to both sides."[20] Those questions included: "Is there anything about this Defendant or about . . . the specific crimes charged in this case that would make it difficult for you to serve as a juror in this case and render an impartial, honest verdict based solely on the evidence presented here in

---

[14] ECF No. 201 at 9.
[15] *Id.* at 10.
[16] *Id.* at 31–32.
[17] *Id.* at 103–04.
[18] *Id.* at 104.
[19] *Id.* at 105.
[20] *Id.* at 35.

court?"[21] and "Is there any other reason you know of that would affect your ability to sit on this jury and render a fair and impartial verdict based solely on the evidence presented here in court?"[22] After venire questioning and individual follow-up questioning, a jury was ultimately selected and sat.[23]

The Court's instructions to the jury both at the beginning of trial and again before jury deliberation also included multiple charges to maintain impartiality and to set aside personal opinions. These included:

> "Keep an open mind throughout the trial. At the end of the trial you will discuss the evidence and reach a verdict. You took an oath to 'well and truly try the issues pending between the parties' and to 'render a true and just verdict.' The oath is your promise to do your duty as a member of the jury."[24]
>
> "You must base your decision only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside the court influence your decision in any way."[25]
>
> "You must keep an open mind throughout the trial. Evidence can only be presented one piece at a time. Do not form or express an opinion about this case while the trial is going on. You must not decide on a verdict until after you have heard all of the evidence and have discussed it thoroughly with your fellow jurors in your deliberations."[26]
>
> "Perform your duties fairly. Do not let bias, sympathy, or prejudice that you may feel toward one side or the other, influence your decision in any way."[27]

On July 2, 2026, Mr. Brown was convicted by the jury of both Possession of Cocaine with Intent to Distribute and Carrying a Firearm During and in Relation to a Drug Trafficking Crime.[28] Mr. Brown now asks that this Court exercise its discretion under Federal Rules of

---

[21] *Id.* at 101.
[22] *Id.* at 101–02.
[23] *Id.* at 217–18.
[24] *Id.* at 227.
[25] *Id.* at 231.
[26] *Id.* at 237.
[27] ECF No. 204 at 155; ECF No. 192 (Instruction No. 16).
[28] ECF No. 204 at 239.

Criminal Procedure 33 to grant a new trial "in the interest of justice." Mr. Brown's sentencing is currently set for October 28, 2026.

## II. CONCLUSIONS OF LAW

### A. Mr. Brown fails to meet his burden to show that a new trial is required in the interests of justice

*1. Legal Standards*

A motion must include a succinct statement of the relief sought as well as a recitation of relevant facts, supporting authority, and argument.[29] Upon a defendant's motion, a trial court may grant a motion for new trial "if the interest of justice so requires."[30] Such motions are "not regarded with favor and should only be granted with great caution."[31] A defendant is not entitled to a new trial when he received a fair trial, even if imperfect.[32] A trial court's decision concerning a motion for new trial is generally reviewed for an abuse of discretion.[33]

The trial court has broad discretion as to the manner and scope of voir dire, "subject to the essential demands of fairness."[34] There is no per se constitutional rule requiring inquiry as to racial prejudice during voir dire.[35] "Only when there are more substantial indications of the likelihood of racial or ethnic prejudice affecting the jurors in a particular case" is such a focused inquiry necessary.[36]

---

[29] DUCrimR 12-1.
[30] FED. R. CRIM. PRO. 33(a).
[31] *United States v. Thompson*, 171 F.4th 1323, 1330 (10th Cir. 2026) (quoting *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997)).
[32] *See, e.g.*, *United States v. Dermen*, 143 F.4th 1148, 1170 (10th Cir. 2025).
[33] *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999) (citing *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir.1997)).
[34] *Aldridge v. United States*, 283 U.S. 308, 310 (1931).
[35] *Rosales-Lopez v. United States*, 451 U.S. 182, 190 (1981).
[36] *Id.*

The Supreme Court and other appellate courts across the country have determined that "[f]ailure to question the jury concerning ethnic or racial prejudice is constitutionally infirm only if ethnic or racial issues are 'inextricably bound up with the conduct of the trial,' or the circumstances in the case 'suggest a significant likelihood that racial prejudice might infect [the defendant's] trial.'"[37] In cases with facts that necessarily involve racial allegations, defenses, or biases, questions regarding racial bias are required by "essential fairness."[38] Capital crimes also have a significant likelihood that racial prejudice might infect a trial.[39] However, where a defendant is charged with a nonviolent victimless crime, "such inquiry is not mandated."[40]

---

[37] *Llach v. United States*, 739 F.2d 1322, 1332 (8th Cir. 1984) (citation omitted) (quoting *Ristaino v. Ross*, 424 U.S. 589, 596, 598 (1976)).

[38] *Ham v. South Carolina*, 409 U.S. 524, 525, 527 (1973) (voir dire related to racial bias was necessary where a Black man charged with drug crimes argued that law enforcement was "out to get him" because of his well-known civil rights activities). *See also USA v. Majeed*, No. 21-20060-JAR, 2024 WL 3511310, at *1 (D. Kan. July 23, 2024) (allegations that teachings of an all-Black religious organization were responsibly for crimes committed by a group of all Black defendants were "special circumstances" sufficient to "indicate a reasonable possibility that racial or ethnic prejudice will influence the jury's evaluation of the evidence" and necessitate venire questions related to racial prejudice) (quoting *Rosales-Lopez*, 451 U.S. at 192 and *United States v. Murry*, 31 F.4th 1274, 1289 (10th Cir. 2022)); *United States v. Polk*, 550 F.2d 1265, 1267 (10th Cir. 1977) (requiring no voir dire questions regarding racial prejudice where a Black man was convicted of transporting forged money orders because there was no crime of violence and "[n]either the charges, facts or circumstances of [the] case suggest[ed] or convey[ed] racial overtones").

[39] *See*, *e.g.*, *Alridge*, 283 U.S. at 309–315 (holding that the district court erred when it failed to ask "any question which could be deemed to cover the subject" of prejudice where a Black man was charged with the murder of a White police officer); *Turner v. Murray*, 476 U.S. 28, 37 (1986) ("Our judgment in this case is that there was an unacceptable risk of racial prejudice infecting the capital sentencing proceeding. This judgment is based on a conjunction of three factors: the fact that the crime charged involved interracial violence, the broad discretion given the jury at the death-penalty hearing, and the special seriousness of the risk of improper sentencing in a capital case.").

[40] *Llach*, 739 F.2d at 1333 (citing *United States v. Groce*, 682 F.2d 1359, 1362–63 (11th Cir. 1982)). *See also Polk*, 550 F.2d at 1267 ("We hold, however, that the trial court's general voir dire examination adequately protected Polk and that specific voir dire examination on racial prejudice was not required. The Constitution does not always entitle a defendant to have questions posed during voir dire specifically directed to matters that might prejudice veniremen against him.").

Generally, a court's discretion "will not be disturbed 'unless it appears from the record that [the court's] voir dire was inadequate to properly test the qualifications and competency of the prospective jurors to sit on trial of the case.'"[41]

The Court finds these standards of appellate review helpful in determining both the bounds of its discretion over the scope of voir dire and whether justice requires that this Court grant a new trial on the grounds of voir dire.

*2. Analysis*

The scope and nature of the voir dire used in this case was properly within the Court's discretion and the interests of justice do not require a new trial. As an initial matter, there are no substantial indications of the likelihood of racial or ethnic prejudice affecting the jurors here. Mr. Brown's crime was a non-violent crime with no identifiable victims. None of the charges or allegations against him concerned race or ethnicity. The matter of race was never raised in any form of evidence. Mr. Brown pursued no defenses related to his race. Racial issues were not inextricably bound up in the conduct of the trial and there are no special circumstances in Mr. Brown's case which suggest a significant likelihood that racial prejudice might infect the trial.

While the census statistics offered by Mr. Brown do show a racial disparity between White and Black populations in the state of Utah, that disparity alone is not a substantial indication of the likelihood of racial or ethnic prejudice.[42] Finding otherwise would mean that

---

[41] *United States v. Bedonie*, 913 F.2d 782, 795 (10th Cir. 1990) (quoting *United States v. Hill*, 526 F.2d 1019, 1025 (10th Cir. 1975)).

[42] *Rosales-Lopez*, 451 U.S. at 190 ("There is no constitutional presumption of juror bias for or against members of any particular racial or ethnic groups.")

Neither is the statistical predominance of the LDS Church in Utah, an issue raised in Mr. Brown's Motion for New Trial, evidence of the substantial likelihood of racial prejudice, particularly without any information regarding the religious demographics of the jury.

every Utah jury would need to be questioned as to racial bias when a defendant is Black, or belongs to any racial minority group, regardless of the specific facts of the case. The Supreme Court has rejected this type of per se rule.[43]

Furthermore, the record reflects that the prospective jurors were asked questions that were intended to elicit substantially the same responses sought by Mr. Brown. During voir dire, the Court reminded the jury panel that the purpose and focus of the Court's inquiry was to discover if each of them could hear and decide the case fairly and impartially, without bias for or prejudice against one side or the other. They were questioned about possible biases against Mr. Brown or his crime and asked to consider any circumstance that might impair their ability to render a fair and impartial verdict. After jury selection, the jurors were repeatedly reminded to "keep an open mind" and to set aside outside influences or information, including biases, suspicions, or prejudices. Nothing suggests that the jury failed to comply with its obligations or that individual jurors suffered from actual bias.

Under the circumstances, the Court was well within its discretion to deny Mr. Brown's request. Mr. Brown is not entitled to a new trial on the basis of the voir dire process. Accordingly, the Court hereby DENIES Mr. Brown's Motion for Retrial (ECF No. 207).

Signed October 21, 2026.

BY THE COURT

Ann Marie McIff Allen
United States District Judge

---

[43] *Id.* ("[T]here is no per se constitutional rule in such circumstances requiring inquiry as to racial prejudice.").